## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JULIE WAKEMAN,

          Plaintiff,

v.

          Case No. 23-CV-2092-TC-TJJ

UBER TECHNOLOGIES, INC.,
UBER USA, LLC,
RASIER, LLC, and
SARA SINGH,

          Defendants.

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Plaintiff's Motion to Compel Discovery Responses and for Sanctions (ECF No. 46). Plaintiff moves to compel Defendants Uber Technologies, Inc., Uber USA, LLC, and Rasier, LLC (collectively "the Uber Defendants")[1] to answer Plaintiff's First Set of Interrogatories and First Request for Production of Documents ("RFPs") under Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv), and for an order determining their objections are waived as untimely under Rules 33(b)(4) and 37(d)(1)(A)(ii). The Uber Defendants argue good cause exists to excuse any failure to timely serve their discovery objections, and their discovery responses are proper and adequate. As explained below, Plaintiff's motion is granted in part and denied in part.

## I.      Procedural Background

In this case, Plaintiff Julie Wakeman alleges Defendant Singh, an Uber rideshare driver, negligently struck and ran over Plaintiff after she exited Singh's vehicle. Singh removed the case

---

[1] When referring to an individual defendant, the Court will shorten Uber Technologies, Inc. to "Uber Technologies"; Uber USA, LLC to "Uber USA"; and Rasier, LLC to "Rasier."

to this Court on March 3, 2023.[2] All Defendants answered and the Uber Defendants filed a motion to compel arbitration and stay the action pending completion of arbitration.[3] On April 26, 2023, the Court held a status conference in lieu of a scheduling conference.[4] The Court deferred entering a scheduling order so the parties could schedule and participate in an early mediation but granted the parties permission to proceed with written discovery.[5]

## II.        History of the Present Discovery Dispute

Plaintiff served her First Set of Interrogatories and First Request for Production of Documents ("the Subject Discovery") upon each of the three Uber Defendants and Singh on May 10, 2023.[6] On June 16, 2023, counsel for the Uber Defendants contacted Plaintiff's counsel to request a 30-day extension, to July 16, 2023, in which to serve discovery responses.[7] Plaintiff's counsel agreed to the requested extension.[8] When the Uber Defendants did not serve their discovery responses on July 16, 2023, counsel for Plaintiff emailed the Uber Defendants' counsel on August 2, 2023, noting he would contact the Court if discovery responses were not received by August 9, 2023.[9] The Uber Defendants' counsel requested an extension to August 16, 2023.[10]

---

[2] *See* Notice of Removal, ECF No. 1.

[3] ECF No. 17.

[4] Apr. 26, 2023 Status Conf. Minute Entry & Order, ECF No. 21.

[5] *Id.*

[6] *See* Pl.'s Notice of Service, ECF No. 22.

[7] June 16, 2023 email, Ex. 1 to Pl.'s Mot., ECF No. 46-1, at 2.

[8] *Id.*

[9] Aug. 2, 2023 email, Ex. 1 to Pl.'s Mot., ECF No. 46-1, at 4–5.

[10] *Id.* at 4.

Plaintiff's counsel agreed to that extension.[11]

On August 16, 2023, the Uber Defendants' counsel emailed Plaintiff's counsel indicating the discovery responses would not be finalized on that day and he would work to get the responses as soon as possible.[12] Plaintiff's counsel replied, noting multiple extensions had already been allowed for the discovery served three months earlier, and at this point Plaintiff would be involving the Court.[13] That day, Plaintiff emailed the Court to request a pre-motion telephone conference under D. Kan. Rule 37.1(a) regarding the Uber Defendants' failure to timely respond to Plaintiff's written discovery requests. On August 18, 2023, the Uber Defendants for the first time were made aware of and received copies of the Subject Discovery from their counsel.[14]

On August 22, 2023, the Uber Defendants served their respective responses[15] and objections to the Subject Discovery.[16] The Court held a discovery conference on August 23, 2023, regarding the Subject Discovery. Counsel for the Uber Defendants appeared at the conference along with newly retained counsel and advised the Court that the Uber Defendants would be retaining different counsel in the case. The Court cautioned the Uber Defendants that due to the untimeliness of their responses and objections, they may have waived any objections to the Subject Discovery, and if they opted to serve amended responses and objections, those amended responses

---

[11] *Id.* at 6.

[12] Aug. 16, 2023 email, Ex. 1 to Pl.'s Mot., ECF No. 46-1, at 6.

[13] *Id.*

[14] Aug. 21, 2023 email, Ex. A to Defs.' Resp, ECF No. 50-2, at 2.

[15] Although the Uber Defendants use the terms "answers" and "responses" to the Subject Discovery interchangeably, the Court will refer to them just as "responses," unless specifically discussing Fed. R. Civ. P. 33.

[16] *See* Uber Def.'s Notice of Service, ECF No. 30.

and objections must be in accordance with Fed. R. Civ. P. 26(g)(1)(B).[17] The Court encouraged counsel to agree on a time frame for the Uber Defendants to amend their discovery responses and ordered them to confer in good faith and notify the Court of their agreement or respective positions.[18]

On August 28, 2023, substitute counsel entered an appearance for the Uber Defendants.[19] On September 6, 2023, the parties emailed chambers jointly proposing that the Uber Defendants serve amended discovery responses and objections.[20] The Uber Defendants served their amended responses and objections to the Subject Discovery on September 13, 2023.[21]

The Court conducted a second discovery conference on October 4, 2023, regarding the Uber Defendants' original and amended responses and objections to the Subject Discovery. The Court provided its guidance and the parties were ordered to confer again and if unable to resolve their discovery disputes, Plaintiff could file a motion to compel discovery.[22] On November 3, 2023, the Uber Defendants served another set of amended responses and objections to the Subject Discovery.[23] Plaintiff filed this motion to compel discovery from the Uber Defendants on November 10, 2023.

---

[17] Discovery Order, ECF No. 32.

[18] *Id.*

[19] *See* Notice of Withdrawal of Counsel & Entry of Appearance of Substituted Counsel, ECF No. 33.

[20] *See* Sept. 7, 2023 Order memorializing the parties' agreement, ECF No. 35.

[21] *See* Uber Defs.' Cert. of Service, ECF No. 38.

[22] Discovery Order No. 2, ECF No. 41. Plaintiff's Oct. 27, 2023 deadline for filing her motion to compel discovery was subsequently extended to Nov. 10, 2023. *See* Orders Extending Deadline, ECF Nos. 43 and 44.

[23] *See* Uber Def.'s Cert. of Service, ECF No. 45.

**III.      The Uber Defendants' Untimely Discovery Objections are Excused for Good Cause**

Plaintiff requests the Court find the Uber Defendants have waived all their objections to the Subject Discovery as untimely under Rules 33(b)(4) and 37(d)(1)(A)(ii). Plaintiff argues the Uber Defendants failed to timely respond to the Subject Discovery, and when they eventually served responses on August 22, 2023, the evening before the first discovery conference with the Court, they objected to nearly every single request and produced little more than what co-defendant Singh had already produced. Plaintiff argues no good cause exists to excuse the Uber Defendants' failure to timely serve their discovery objections, and waiver of their untimely objections is the appropriate sanction when the untimeliness is due to their former counsel.

The Uber Defendants argue waiver of their discovery objections is not appropriate and there is good cause for the Court to excuse their untimely objections. They argue Plaintiff is not prejudiced by any delay because the Court has not yet issued a scheduling order due to the Uber Defendants' pending motion to compel arbitration, and therefore no discovery deadline has been set. The Uber Defendants claim they have not acted in bad faith or with an improper motive, but rather any delay in responding was the result of their former counsel's personal and work obligations. They further argue imposing a waiver of all their discovery objections would be excessively harsh, would serve no deterrent value, and would force them to expend significant unnecessary resources to search for and produce additional documents responsive to Plaintiff's overly broad and irrelevant discovery requests.

Federal Rule of Civil Procedure 33(b)(2) requires the responding party to serve answers and objections within 30 days after service of interrogatories. Rule 34(b)(2)(A) likewise requires a party to respond in writing within 30 days of service of requests for production of documents, if they are served after the parties' first Rule 26(f) planning conference. If the responding party states

it will produce copies of documents, the production must be completed no later than the time specified in the request or another reasonable time specified in the response.[24] Both Rule 33(b)(2) and 34(b)(2)(A) allow the parties to stipulate to a "shorter or longer time" for the responding party to serve responses and objections to interrogatories and requests for production under Rule 29. If a responding party fails to assert timely objections in response to discovery requests, those objections are deemed waived unless the court excuses the failure for good cause.[25] The showing of "good cause" in this context typically requires "at least as much as would be required to show excusable neglect."[26] The party failing to assert timely objections must show it could not have reasonably met the deadline to respond despite due diligence.[27] Mistake of counsel, ignorance of the rules, or lack of prejudice to the opposing party generally does not constitute "good cause."[28] However, the determination of whether good cause exists depends on the circumstances of the individual case and lies largely in the discretion of the court.[29] "Rule 37(d) implicitly stands for the notion that the sanction of waiver is best suited for the more serious discovery violations."[30]

Certain cases from this District have found that untimely objections attributable to the

---

[24] Fed. R. Civ. P. 34(b)(2)(B).

[25] "Any ground not stated in a timely objection [to an interrogatory] is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). The same principles apply to requests for production under Rule 34. *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 497 (D. Kan. 1998).

[26] *Linnebur v. United Tel. Ass'n,* No. 10-1379-RDR, 2012 WL 1183073, at *6 (D. Kan. Apr. 9, 2012) (citing *Starlight*, 181 F.R.D. at 496).

[27] *Id.*

[28] *Id.*

[29] *Ice Corp. v. Hamilton Sundstrand Corp.,* No. 05-4135-JAR, 2007 WL 1742163, at *2 n.13 (D. Kan. May 24, 2007) (citations omitted); *Cargill, Inc. v. Ron Burge Trucking, Inc.,* 284 F.R.D. 421, 426 (D. Minn. 2012).

[30] *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995).

carelessness of the party's counsel do not constitute good cause. In *Farha v. Idbeis*, the court found that counsel's carelessness when transferring pending discovery requests to a new attorney, followed by a 2–3 month delay in responding to the discovery request and after a motion to compel had been filed, did not constitute good cause or excusable neglect for purposes of Rule 33(b)(2).[31] In *Linnebur*, the court found the defendant failed to show good cause to excuse its failure to timely object when the defendant argued its counsel informed plaintiff's counsel by email that defendant's discovery responses would be provided later than the extended response deadline stipulated to by the parties.[32] The defendant then failed to serve the discovery responses more than a month after the extended response deadline.[33] Similarly, in *Fifth Third Bank*, the court found the defendants failed to show good cause to excuse the untimeliness of their objections served nearly a month late based upon the carelessness of their counsel, who was defending three cases with the same plaintiff's counsel at the time the discovery responses were due and had agreements on some of these to extend the time to respond to discovery requests.[34]

In contrast, other cases from this district have found good cause to excuse a party's failure to timely serve discovery objections. In *Hammond v. Lowe's Home Centers, Inc.*, the court excused the defendant's untimely objections based upon the fact that neither party had strictly complied with the discovery deadlines.[35] In that case, the delay was less than 30 days and defendant asserted that it had cooperated with the plaintiffs with respect to discovery in good faith, and worked

---

[31] *Farha v. Idbeis*, No. 09-1059-JTM, 2010 WL 3168146, at *5 (D. Kan. Aug. 10, 2010).

[32] *Linnebur*, 2012 WL 1183073, at *7.

[33] *Id.*

[34] *Fifth Third Bank v. KC II Insure Servs., LLC*, No. 11-CV-2101 CM/DJW, 2011 WL 5920949, at *3 (D. Kan. Nov. 28, 2011).

[35] *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 669–70 (D. Kan. 2003).

extensively with opposing counsel to cooperatively exchange discovery information in the case without strict adherence to time limitations.[36] In *Ice Corp. v. Hamilton Sundstrand Corp.*, the court found that the plaintiff demonstrated sufficient good cause to excuse a one-week delay of its amended discovery responses.[37] The plaintiff argued the untimeliness was due to a series of factors, including an attorney's leaving the firm, the critical illness of another attorney's parent, and an almost 400-hour workload shouldered by the remaining attorneys.[38]

In this case, Plaintiff served her First Interrogatories and RFPs upon each of the three Uber Defendants on May 10, 2023, which was after the parties' first Rule 26(f) planning conference. The Uber Defendants' deadline for serving their responses and any objections to the interrogatories and RFPs was therefore 30 days after service, unless the parties stipulated to a longer time under Rule 29. It is not clear whether and to what extent Plaintiff stipulated to extensions of the Uber Defendants' deadline for serving their discovery responses. Plaintiff acknowledges that her counsel agreed to at least a 30-day extension to July 16, 2023,[39] and another extension to August 16, 2023.[40] However, the email sent by Plaintiff's counsel on August 16, 2023 makes clear Plaintiff was not agreeing to any more "professional courtesy" extensions. The Uber Defendants' responses and objections, served six days later on August 22, 2023, were therefore untimely. This is undisputed.

The Court must then determine whether the Uber Defendants' untimely discovery

---

[36] *Id.* at 669.

[37] *Ice Corp.*, 2007 WL 1742163, at *2.

[38] *Id.*

[39] *See* June 16, 2023 emails, Ex. A to Pl.'s Mot., ECF No. 46-1, at 2.

[40] Pl.'s Mot., at 2.

responses and objections should be excused for good cause. Considering all the circumstances in this case,[41] the Court finds the Uber Defendants have shown good cause to excuse their untimely objections. The unusual posture of this case weighs heavily in the Court's analysis. No scheduling order setting a discovery deadline has yet been entered in the case, due to the pending motion to compel arbitration filed by the Uber Defendants. The six-day delay of the Uber Defendants in serving their initial responses and objections to the Subject Discovery, on August 22, 2023, is not materially significant given the posture of the case[42]—where a discovery deadline has not yet been set. In addition, the Uber Defendants' prior counsel failed to inform them of the Subject Discovery Requests until August 18, 2023, three months after the requests were served. Four days later, the Uber Defendants served their initial responses and objections to over 200 total discovery requests. There is no evidence the Uber Defendants' delay was in bad faith or to seek a tactical advantage in the case. Rather, the delay was a result of prior counsel's woefully belated transmittal of the Subject Discovery to the Uber Defendants. Once aware of the Subject Discovery, the Uber Defendants acted quickly to retain new counsel and, after multiple conferences with the Court and opposing counsel, many of the initial objections have been withdrawn and others will be decided

---

[41] In their Response, the Uber Defendants urge the Court to adopt a multi-factor approach utilized by several other district courts to determine whether good cause exists to excuse their untimely discovery objections in this case. These factors include: (1) the length of the delay; (2) the reason for the delay; (3) whether the responding party acted in bad faith; (4) whether the requesting party has been prejudiced by the delay; (5) whether the discovery requests were overly burdensome; and (6) whether waiver would impose an excessively harsh result. *Cargill*, 284 F.R.D. at 426; *Hall v. Sullivan*, 231 F.R.D. 468, 474 (D. Md. 2005); *United States v. City of Los Angeles*, No. 2:11-cv-00974-PSG-JC, 2023 WL 6370889 at * 12 n. 32 (C.D. Cal. Apr. 12, 2023); and *Nasreen v. Capitol Petroleum Grp., LLC*, 340 F.R.D. 489, 497–98 (D.D.C. 2022). While the Court is not bound by the cited cases from other districts, the Court finds some of the factors included in the multi-factor test cited in these cases instructive and helpful to its analysis here.

[42] The Court finds the circumstances here are analogous to those in *Ice Corp.*, 2007 WL 1742163, at *2, where the court found good cause to excuse a one-week delay in serving discovery responses attributable to circumstances impacting the party's counsel. In the *Farha*, *Linnebur*, and *Fifth Third Bank* cases discussed above, where courts from this district found parties had not shown good to excuse untimely objections, much longer delays of one month or more occurred.

in this Order. Plaintiff acknowledges in her motion that based on the "multiple supplements and telephone conferences between counsel for the parties, only a few discovery requests remain at issue."[43] Indeed, some of those the Court has determined are overly broad or disproportionate to the needs of this case. Discovery is ongoing. Plaintiff will not be prejudiced by the Uber Defendants' delay. Moreover, a waiver here would impose an excessively harsh result. Waiver would punish the Uber Defendants, even though the fault for the delay rests not with them but with their former counsel (who would not be impacted by a waiver ruling). And, the consequences of a waiver ruling could be far-reaching given the Uber Defendants involvement in nationwide litigation involving issues similar to those at issue in this case. Accordingly, exercising its broad discretion in the unique circumstances presented here, the Court finds the Uber Defendants have shown good cause to excuse their failure to timely serve their initial responses and objections to Plaintiff's First Interrogatories and RFPs.

## IV.      Plaintiff's Discovery Requests to Defendant Uber USA

The Uber Defendants argue Plaintiff's motion to compel discovery should be denied as to Uber USA because it is not a proper party to this case, having no corporate relationship with Rasier, no contractual relationship with Singh, and no involvement with the subject incident. They contend any request to or involving Uber USA is therefore irrelevant.

The Uber Defendants cite no legal authority or support for their argument that an improperly named defendant should not be required to respond to discovery requests. The Court's own research locates no binding legal authority for this argument. Uber USA is party to this case, and even if it contends it is improperly named as a defendant, it must comply with all discovery obligations imposed by the Federal Rules of Civil Procedure, including serving its responses to

---

[43] ECF No. 46, at 6.

Plaintiff's First Interrogatories and RFPs.

## V.       Plaintiff's Specific Discovery Requests at Issue

### A.       Interrogatory 2 (description of relationships between Defendants)

Plaintiff's First Interrogatory 2(a)-(c) asks each of the Uber Defendants to "describe in detail the relationships, including identification of any agreements, existing on January 23, 2022" between each of them and Singh, and between each other. The Uber Defendants objected to the interrogatory because it uses the vague and ambiguous terms "relationships" and "agreements," is overly broad, unduly burdensome, and seeks information not relevant to any claim or defense. Subject to their objections, the Uber Defendants provide substantive and lengthy responses to Interrogatory 2, but state they are "withholding identification of documents that would be responsive to the request" for agreements between Rasier and Uber Technologies, and between Uber USA and Uber Technologies.

Based upon a review of the responses and objections, the Court sustains in part the Uber Defendants' relevance, overly broad, and vagueness objections. The Court sustains the relevance objections to Interrogatory 2's request for identification of agreements between every identified entity except for those between Defendants Rasier and Singh. The relevance of the requests, using the broad term "agreements," between the related Uber Defendants corporate entities Rasier, Uber USA, and Uber Technologies is not apparent, and Plaintiff has failed to provide any argument or rationale why this information is relevant to any claims or defenses asserted in the case. The Court also sustains the vagueness and overly broad objections to the term "relationships." The Court otherwise finds the responses provided by the Uber Defendants to Interrogatory 2 are sufficiently responsive, except that Rasier shall serve an amended response to Interrogatory 2(a) that indicates whether there are any other agreements between Rasier and Singh (other than the referenced

Platform Access Agreement) and identifies any such agreements, or clarifies the Platform Access Agreement is the only responsive agreement.

B.    **RFPs 3 and 4 (relationships and agreements between Defendants)**

Plaintiff's RFPs 3 and 4[44] seek production of documents establishing the relationships and agreements between all four defendants. The three Uber Defendants objected that the discovery requests are vague and ambiguous with respect to their use of the term "agreements," overly broad, unduly burdensome, and not limited in time or scope. Subject to their objections, the Uber Defendants produced the Platform Access Agreement, Plaintiff and her spouse's Terms of Use, and related addenda, as well as a declaration attesting that Rasier is a wholly owned subsidiary of Uber Technologies and no relationship exists between Rasier and Uber USA. The responses further stated:

> Given the unduly broad request, Defendant has not endeavored to identify or produce every document that establishes the relationship between the defendants, which could include every motion filed in every case where the relationships between Rasier and independent drivers or passengers is litigated and resulting orders. Further, Rasier has produced documents and information sufficient to show the nature of the relationship between and among Rasier, LLC, Uber USA, Uber Technologies, Inc., plaintiff Wakeman and her spouse, and Defendant Singh.[45]

Plaintiff argues in her motion to compel that the Uber Defendants lodged stock objections and then stated they had "not endeavored to identify or produce every document that establishes the relationship between the defendants." Plaintiff also argues the responses fail to state whether any documents are being withheld as required by Rule 34(b)(2)(C).

---

[44] The RFPs at issue in this motion are numbered differently for Uber Technologies than for Uber USA and Rasier. For example, Plaintiff's RFPs **3** and **4** served upon Uber Technologies are numbered as RFPs **6** and **7** for Uber USA and Rasier. *See* ECF No. 46-3 at 8–9, 70–71 and 129–130. Consistent with the parties' briefing, the Court will primarily reference the specific RFP number served upon Uber Technologies.

[45] Def. Uber Tech. Am. Resps. & Objs., ECF No. 46-3, at 129–30.

The Court sustains in part the Uber Defendants' relevance, overly broad, and vagueness objections to RFPs 3 and 4 for the reasons set forth above for Interrogatory 2, except that Rasier must produce all agreements between Rasier and Singh that it has not already produced, which will be identified in Rasier's amended response to Interrogatory 2 discussed above. Plaintiff fails to show the relevance of her requests for documents establishing the relationship and agreements between the three Uber Defendants. The Court finds the Uber Defendants' amended responses and their production of the Platform Access Agreement, Plaintiff and her spouse's Terms of Use, and declaration regarding the relationships between Rasier and Uber USA and Uber Technologies are sufficient, except that Rasier shall produce all other agreements between it and Singh, which it has not previously produced, and serve amended responses clarifying its document production.

### C.    RFP 6 (rideshare driver investigation and approval policies and procedures)

Plaintiff's RFP 6[46] requests "[a]ll policies and procedures governing the process of considering, investigating, and/or approving a person who applies to operate as a rideshare driver using the Uber app." The Uber Defendants object to the request as overly broad, unduly burdensome, seeking irrelevant, confidential, and proprietary business information, and not limited in time or scope. After objecting, the Uber Defendants state they have not "endeavored to identify or produce documents that either reflect policies or procedures not in effect at the time Singh signed up to access the Uber App or were not applicable to her sign up."[47]

Plaintiff argues in her motion to compel that the Uber Defendants say they have produced all documents considered in connection with granting Singh access to the Uber App, but have not produced any "policies and procedures." Plaintiff is skeptical of the Uber Defendants' responses

---

[46] RFP 9 to Rasier and Uber USA.

[47] Def. Uber Tech. Am. Resps. & Objs., ECF No. 46-3, at 132.

indicating they have no policies or procedures requiring Singh to submit her driver's license, vehicle registration, proof of insurance, and background check.

The Court sustains in part the Uber Defendants' objections to RFP 6 as overly broad and not limited in time or scope. The Court finds the lack of time and scope limitations renders the discovery requested overly broad and not proportional to the needs of this case. This request would require production of policies and procedures not in effect or otherwise inapplicable to Defendant Singh's application for access to the Uber App, such as those applicable to the onboarding of independent drivers in jurisdictions or for time periods not applicable where or when Singh submitted her application. The Court therefore limits Plaintiff's RFP 6 to the requested driver investigation and approval policies and procedures in effect at the time and for the states where Singh applied to operate as a rideshare driver. Subject to this limitation, the Uber Defendants shall produce all driver investigation and approval policies and procedures responsive to RFP 6 and serve an amended response reflecting this production.

### D. RFPs 8 and 45–49 (rideshare driver's responsibilities)

Plaintiff's RFP 8[48] requests "[a]ll documents setting forth the responsibilities of a person operating as a rideshare driver with the Uber app." RFPs 45–49 request documents referring to the driver's responsibilities in Kansas or Missouri regarding the maximum number of passengers that should be carried in a vehicle at any one time (RFP 45), how to deal with drunken or unruly passengers (RFP 46), open alcoholic beverage containers (ECF 47), smoking (ECF 48), and inebriated or incoherent passengers (ECF 49).[49] The Uber Defendants state in their responses:

> None, as Defendant does not employ independent drivers like Ms. Singh and therefore, does not impose responsibilities on them. Further responding, Defendant

---

[48] RFP 12 to Rasier and Uber USA.

[49] RFPs 48–52 to Rasier and Uber USA.

will produce the Platform Access Agreement and related addenda and Community Guidelines, which apply equally to all users of the platform.[50]

Plaintiff argues the Uber Defendants' responses are contradictory, stating "none" because they do not employ independent drivers but then referencing and producing the Platform Access Agreement. The Uber Defendants point out they did not object to these requests and there is nothing to compel here because no responsive documents exist based upon Singh's classification as an independent contractor. The Uber Defendants argue any obligations independent drivers have are the contractual ones set forth in the Platform Access Agreement, which they do not consider to be "responsibilities."

The Court finds the Uber Defendants' responses to RFPs 8 and 45–49 stating "none" without objection and then producing the Platform Access Agreement and other documents as responsive are contradictory. Further, the qualifying conditional language that the Uber Defendants "do not employ independent drivers" like Singh is essentially legal argument and makes the responses ambiguous. The Court therefore finds these discovery responses are insufficient, and the Uber Defendants have not satisfactorily explained their responses when challenged by Plaintiff. The Uber Defendants cannot avoid producing responsive documents by qualifying their discovery responses to state they do not employ independent drivers like Singh. These RFPs do not request documents from employees or independent contractors, but from "persons operating as a rideshare driver with the Uber app." If the Uber Defendants have documents that are responsive to these RFPs for persons operating as rideshare drivers with the Uber app, *irrespective of whether the Uber Defendants consider them to be independent contractors*, they are required to produce them. The Uber Defendants have asserted no objections

---

[50] Def. Uber Tech. Am. Resps. & Objs., ECF No. 46-3, at 134, 171–75.

to RFPs 8 and 45–49 so they must produce all responsive documents and amend their responses to remove the conditional language and legal argument that make the responses ambiguous.

     **E.**     **RFPs 28–30 and 35 (rideshare driver's expectations)**

     RFPs 28, 30, and 35 ask the Uber Defendants to produce documents that refer to, reflect, memorialize, or otherwise evidence whether drivers in Kansas or Missouri were expected, after signing on to the app, to be actively driving versus sitting stationary (RFP 28),[51] what would be the effect of being stationary after being logged on (RFP 30),[52] and what the driver is expected to do upon receiving a request for service (RFP 35).[53] RFP 29[54] seeks the policies and procedures regarding the passage of time between acceptance of trips.

     The Uber Defendants did not object and responded, "None, as Defendant[s] do[] not employ independent drivers like Ms. Singh" and therefore do not possess any documents. For RFP 35, the Uber Defendants also responded they do not expect independent drivers to do anything upon receiving a trip request and produced the Platform Access Agreement.[55]

     Plaintiff argues the Uber Defendants responded to each of these requests that, because they do not employ drivers like Singh, no such documents exist, while at the same time stating they will produce certain responsive documents. Plaintiff requests the Court compel the Uber Defendants to serve revised responses omitting their position on drivers' employment or agency and simply respond to the request.

---

[51] RFP 31 to Rasier and Uber USA.

[52] RFP 33 to Rasier and Uber USA.

[53] RFP 38 to Rasier and Uber USA.

[54] RFP 32 to Rasier and Uber USA.

[55] Def. Uber Tech. Am. Resps. & Objs., ECF No. 46-3, at 161.

The Uber Defendants stress they did not object to these requests and there is nothing to compel here. They state no responsive documents exist because of Singh's classification as an independent contractor. They consistently maintain the only obligations independent drivers like Singh have related to these requests are the contractual obligations set forth in the Platform Access Agreement, which has been produced. They argue Plaintiff's dissatisfaction with Defendants' discovery responses is no basis on which to compel a different one.

For the same rationale as set forth in the preceding section, the Court finds the Uber Defendants' responses—stating "none" but relying on their statement they do not employ independent drivers like Singh—are ambiguous and therefore insufficient. They must produce discovery responsive to these RFPs and amend their responses to RFPs 28–30 and 35 (as clarified above) to remove the conditional language and legal argument that make the responses ambiguous.

### F.    RFP 10 (training program documents)

RFP 10[56] requests "[a]ll documents that evidence any training program you created, offered, required, recommended, or suggested (whether created or conducted by you) that provided training to Singh regarding operating as a rideshare driver while using the Uber app." The Uber Defendants responded: "None, as Defendant does not employ independent third-party transportation providers like Sara Singh and therefore does not train them." They further refer Plaintiff to Uber's publicly available website that provides guidance to potential independent drivers.

Plaintiff questions the Uber Defendants' good faith in responding to this discovery request, referencing emails in which Singh is encouraged to attend "Uber 101" and "Uber 201" presentations. Plaintiff contends these presentations or sessions appear to qualify as "training

---

[56] RFP 14 to Rasier and Uber USA.

programs" that the Uber Defendants offered to Singh, and they should be compelled to respond in full, which includes producing the "Uber 101" and Uber 201" presentations and other training documents.

The Uber Defendants state they did not object to this request and, in accordance with the Kansas Transportation Network Company Services Act § 8-2720, which they claim is applicable in this case, they do not require independent drivers to complete training in Kansas. With respect to "Uber 101" or "Uber 201," the Uber Defendants explain they do not consider these offerings to be training as there is no requirement independent drivers attend or participate. The Uber Defendants state they are currently searching for, and will produce if located, content for Uber 101 and 201 that would have been available to Singh.

The Court finds the Uber Defendants have not produced the requested training documents, nor have they objected to the scope of the request. The Court finds the "Uber 101" and "Uber 201" presentations offered to Singh are responsive to Plaintiff's RFP 10 and must be produced. As discussed previously, the Uber Defendants may not qualify their responses with conditional language that they do not employ third-party transportation drivers like Singh. The Uber Defendants shall produce all training materials "created, offered, required, recommended, or suggested" to Singh in response to RFP 10, without limiting their discovery production to just "required" training, and shall amend their responses to RFP 10 accordingly.

### G.     RFP 11 (driver performance evaluations)

RFP 11[57] seeks "[a]ll documents reflecting evaluations of defendant Singh's performance as a rideshare driver with the Uber app, including but not limited to reviews, ratings, and complaints, whether published by you or anyone else."  The Uber Defendants responded:

---

[57] RFP 15 to Rasier and Uber USA.

> Because Defendant does not employ independent drivers like Ms. Singh, it does not evaluate them. Defendant has also produced subject to the Protective Order, Ms. Singh's rider feedback and ratings. Defendant is not in possession, custody, or control of any complaints regarding Ms. Singh's performance as a rideshare driver using the driver version of the Uber App.[58]

Plaintiff argues the responses are contradictory because they first indicate there are no such documents, based on the Uber Defendant's position that they do not employ or evaluate drivers, then produce rider feedback and ratings. Plaintiff requests the Uber Defendants be compelled to provide clear responses that omit their position on Singh's employment or agency.

The Uber Defendants maintain their responses are complete and there is no objection to waive. They argue because independent drivers are not employees, they do not evaluate their performance, but nonetheless they produced Singh's rider feedback and ratings.

The Court finds the Uber Defendants' responses to RFP 11 are contradictory and ambiguous, and therefore insufficient. If the Uber Defendants have any responsive driver performance evaluations for Singh, they must produce them regardless how they classify Singh's employment or who conducted the evaluations. The Uber Defendants may not qualify their discovery responses with conditional language that they do not employ third-party drivers like Singh. The Uber Defendants must also amend their responses to RFP 11 to remove the improper conditional language and legal argument that make the responses ambiguous.

### H.      RFP 16 (driver training program development)

RFP 16[59] requests the Uber Defendants produce "[a]ll documents evidencing communications, either internal or external, regarding the development of a driver training

---

[58] Def. Uber Tech. Am. Resps. & Objs., ECF No. 46-3, at 137.

[59] RFP 19 to Rasier and Uber USA.

program for persons operating as rideshare drivers using the Uber app."[60] The Uber Defendants objected to this request on the grounds it is overly broad as to geographic scope and time.

Plaintiff argues RFP 16 also covers any Uber emails discussing or even rejecting the idea of developing a driver training program, and the Uber Defendants should be deemed to have waived their objections and ordered to respond in full.

The Uber Defendants argue this request has no temporal limitations and seeks "all" documents related to the development of training programs that have zero applicability to Singh's on boarding and use of the Uber App. They contend training is not required for independent drivers in Kansas and Singh would not have access to training that may exist for independent drivers in other jurisdictions. They contend requiring them to produce "all documents" regarding the development of training programs inapplicable to the claims here would also be disproportionate to the needs of this case. Finally, they contend this information is also confidential and proprietary, and disclosure would cause competitive injury.

The Court sustains in full the Uber Defendants' objection that this request is overly broad as to geographic scope and time. On its face, RFP 16 contains no limitation in geographic scope or time to the broad request for both internal and external communications regarding the development of a driver training program. This request would encompass the broad category of "communications" without defining the reference points for what would constitute "internal" and "external" communications. The Court further finds the request is unduly vague and the breadth of the request is disproportional to the needs of the case, as well as the importance and likely benefit of the requested discovery. Plaintiff's motion to compel is denied as to RFP 16.

---

[60] Def. Uber Tech. Am. Resps. & Objs., ECF No. 46-3, at 142.

## I.       RFP 21-23 (rideshare fare charged and received)

RFPs 21–23[61] ask the Uber Defendants to produce "[a]ny and all documents which refer to, reflect, memorialize, or otherwise evidence" how a fare or amount charged is calculated (RFP 21), and how much of the fare the driver (RFP 22), and Uber receives (RFP 23).[62] The Uber Defendants objected that the requests are overly broad, unduly burdensome, not limited in time or scope, improper under Rule 34(b)(1)(A), and seek confidential proprietary business information and trade secrets. Subject to their objections, the Uber Defendants produced the Platform Access Agreement and related addenda, and Plaintiff and her spouse's Terms of Use.

Plaintiff argues these RFPs are directly related to the issue of the Uber Defendants' "control" of rideshare drivers, and their objections should be deemed waived and full responses compelled. The Uber Defendants admit they have not endeavored to find all responsive documents.

The Uber Defendants argue this is not a case about pricing on the Uber App, and Plaintiff has not and cannot articulate any compelling need for additional information in response to this request. They argue their current production sufficiently shows all relevant factors for determining a fare, including how the amount charged to a rideshare passenger is calculated, how much of the fare the independent driver receives, and how much of the fare Defendants receive. They argue the precise mechanism used to calculate a fare is not relevant to this case and involves confidential and proprietary business information that is central to Uber's competitive edge in the highly competitive technology market. Additionally, gathering such information would impose an excessive burden involving hundreds of thousands of documents and take several months to compile and review for privilege.

---

[61] RFPs 24–26 to Rasier and Uber USA.

[62] Def. Uber Tech. Am. Resps. & Objs., ECF No. 46-3, at 147–49.

The Court finds RFPs 21–23 are overly broad as they have no temporal or scope limitation and would therefore impose an undue burden and expense upon the Uber Defendants disproportional to the importance of the discovery requested. The Court also agrees with the Uber Defendants that the precise mechanism used to calculate a fare is not relevant to this case. However, the Court finds that documents discussing or describing how a fare was apportioned between the driver and Uber at the time of the incident at issue would be relevant to the issue of the Uber Defendants' control over rideshare drivers. The Court therefore sustains in full the Uber Defendants' objections to RFP 21 that they are overly broad, unduly burdensome, and not limited in time or scope.  Plaintiff's motion to compel is denied as to RFP 21 (fare calculation).

The Court sustains in part the Uber Defendants' overly broad, unduly burdensome, and not limited in time or scope objections to RFP 22 (rideshare driver's fare received) and RFP 23 (Uber fare received). The Court will limit RFPs 22 and 23 to responsive documents applicable to Singh at the time of the incident that *discuss or describe* how it is determined or calculated how much of the fare the rideshare driver and Uber receives. Subject to this limitation, the Uber Defendants shall produce all responsive documents to RFPs 22 and 23 and serve amended responses to these two requests identifying all responsive documents produced.

**J.      RFPs 52–54 to Uber Technologies and RFPs 1–3 to Rasier and Uber USA (internal operating agreements, corporate ownership and formation records, tax returns, and financial statements)**

RFPs 52–54 to Uber Technologies seek its internal operating agreements adopted by January 23, 2022, ownership interest records in, and assumed legal or financial obligations of, Uber USA or Rasier. Defendant Uber Technologies objected to these requests as overly broad, unduly burdensome, not limited in time or scope, and seeking financial information that is not relevant and not proportional to the needs of this case.

RFPs 1–3 to Rasier and Uber USA seek their corporate entity formation documents and tax returns and financial statements for 2022 and the ten years prior. Overly broad, relevance, unduly burdensome, and proportionality objections were asserted to the RFPs. Rasier and Uber USA produced their Operating Agreement and Amended & Restated Operating Agreement, but stated they are withholding responsive documents.

The Court sustains in full all objections to RFPs 52–54 to Uber Technologies and RFPs 1–3 to Rasier and Uber USA. The relevance of Plaintiff's ridiculously overly broad discovery requests seeking Uber Technologies' corporate formation and ownership, tax returns, and financial documents is not apparent. Plaintiff fails to explain the relevance of even a more limited scope. Plaintiff argues in her reply that the requested documents "may shed light on the alter ego theory [and] have the potential to shed light on Uber's relationship with defendant Singh, which is apparently the cornerstone of Uber's defense in this case."[63] This argument is unpersuasive as Plaintiff does not explain how the requested documents—seeking internal corporate formation and ownership interests between the three Uber Defendants—would shed light on the relationship between *Singh* and any of the Uber Defendants. Nor does Plaintiff explain how the requested documents would be relevant to or shed light on any alter ego theory of liability she may argue. The Uber Defendants state in their discovery responses they will not seek to avoid liability based on the corporate relationship between Rasier and Uber Technologies, or the fact that Uber Technologies was not a party to the Platform Access Agreement with Singh. They state they also have disclosed primary and excess insurance coverage.

With regard to Plaintiff's requests seeking financial-related documents of Uber Technologies, Plaintiff has not made a claim for punitive damages or alleged conspiracy or fraud

---

[63] Pl.'s Reply, ECF No. 51, at 3.

in her Petition. Even if she sought punitive damages, the Court would postpone any production of financial condition documents until after a ruling on any dispositive motion on the issue of punitive damages.[64] Plaintiff's motion to compel is denied as to RFPs 52–54 to Uber Technologies and RFPs 1–3 to Rasier and Uber USA.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery Responses and for Sanctions (ECF No. 46) is granted in part and denied in part, as set forth herein. All discovery and amended responses compelled herein shall be served within **fourteen (14) days** of the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's requested sanction of deeming the Uber Defendants' objections waived as untimely is denied.

IT IS SO ORDERED.

Dated February 1, 2024, at Kansas City, Kansas.

_____
Teresa J. James
U. S. Magistrate Judge

---

[64] *See Koel v. Citizens Med. Ctr., Inc.*, No. 2:21-cv-02166-HLT-TJJ, 2023 WL 315030, at *4 (D. Kan. Jan. 19, 2023) (staying production of the defendant's financial information until after a ruling on any forthcoming motion on the issue of punitive damages).