**In the United States District Court
for the District of Kansas**

---

Case No. 23-cv-02092-TC-TJJ

---

JULIE WAKEMAN,

*Plaintiff*

v.

UBER TECHNOLOGIES, INC., ET AL.,

*Defendants*

---

**MEMORANDUM AND ORDER**

Julie Wakeman sued Sara Singh, Rasier LLC, Uber Technologies, Inc., and Uber USA LLC for personal injury arising out of a car accident. Doc. 1-1. The corporate defendants moved to compel arbitration. Docs. 11 and 17. For the following reasons, those motions are granted, and the case is stayed, pending the outcome of arbitration.

**I**

**A**

The Federal Arbitration Act, 9 U.S.C §§ 1–16, codifies "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It requires courts to enforce agreements to arbitrate according to their terms. *Id.* A court may do so only after determining that the parties entered a valid contract including an arbitration clause and that the arbitration clause applies to their dispute. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297–99 (2010) (citing *Rent-A-Center, West, Inc., v. Jackson*, 561 U.S. 63, 68–70 (2010)) (emphasis original). But the parties may delegate applicability and arbitrability questions to the arbitrator. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1104 (10th Cir. 2020); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

Federal courts apply a summary-judgment-like standard to motions to compel arbitration: the moving party bears the burden of showing that there is no genuine issue of material fact about whether the parties agreed to a valid contract including an arbitration clause and whether the arbitration clause applies to the dispute in issue. *Hancock v. AT&T*, 701 F.3d 1248, 1261 (10th Cir. 2012); *see also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975 (10th Cir. 2014). Generally, courts should apply "ordinary [state-law] principles" governing contract formation and scope in making those determinations. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

**B**

Julie Wakeman was watching a football game at a restaurant in Shawnee, Kansas with her husband, Michael Niemann. Doc. 3 at ¶¶ 2, 11.[1] At halftime, Wakeman decided to watch the rest of the game at home, and Niemann, using his Uber app ordered an Uber ride for her. *Id.* at ¶¶ 12–13. Sara Singh responded and drove her to Wakeman's home in Kansas. *Id.* at ¶ 7, 15. While backing out of Wakeman's driveway, Singh allegedly struck Wakeman. *Id.* at ¶ 16. Wakeman then sued Singh and three corporate entities, Uber Technologies, Inc., Uber USA, LLC, and Rasier, LLC (collectively, the Uber Defendants).

It is uncontested that, although Niemann procured the Uber ride for Wakeman, Wakeman separately agreed to the Uber Defendants' July 12, 2021, Terms of Use by clickwrap agreement in her own personal Uber application. *See* Doc. 18-1 at ¶¶ 12, 13. The July 12, 2021 terms contain the following arbitration clause:

> By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement
>
> \*\*\*
>
> Except as expressly provided below in Section 2(b), you and Uber agree that any dispute, claim or controversy in any way arising out of or relating to (i) these

---

[1] All citations are to the document and page number assigned in the CM/ECF system.

> Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof, (ii) your access to or use of the Services at any time, (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services … or (iv) your relationship with Uber, will be settled by binding arbitration between you and Uber, and not in a court of law.

Doc. 18-1 at 11. The first section of the agreement also states in all caps, bold type: "Please review the arbitration agreement below carefully, as it requires you to resolve all disputes with Uber on an individual basis, and with limited exceptions, through final and binding arbitration." *Id.* at 10.

Along with the arbitration agreement itself, the Terms of Use specify that arbitration will be in accordance with the American Arbitration Association's Consumer Arbitration rules. Doc. 18-1 at 12. And the Terms include an express delegation clause: "[T]he arbitrator [], and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement … The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory … If there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue." Doc. 18-1 at 12.

In response to Wakeman's lawsuit, the Uber Defendants filed a motion to compel arbitration and to dismiss or stay the action pending the outcome of arbitration. Doc. 17.[2] Wakeman concedes her agreement to the arbitration clause but argues it does not apply because Uber does not treat transportation as one of its "Services," and, in any event, Niemann procured the Uber services at issue. Doc. 20 at 4–5. She also contests whether the delegation clause is enforceable as to issues of contract formation. *Id.*

---

[2] The motion was originally filed as Doc. 11 but to comply with local rules was refiled as Doc. 17. *See* Doc. 16. Thus, this order resolves both Doc. 11 and Doc. 17.

3

## II

The parties entered into a valid contract containing an express arbitration clause. The only dispute is whether that clause covers the issue here. The express delegation clause commits that dispute to the arbitrator, so the motion to compel arbitration is granted, and the matter is stayed pending the outcome of arbitration.

### A

"While issues such as the scope and enforceability of an arbitration clause can be committed to an arbitrator through a delegation provision, courts must always resolve whether the clause was agreed to by the parties." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106 (10th Cir. 2020) (citing *Granite Rock*, 561 U.S. at 297, 299) (internal quotation marks omitted). Accordingly, it is necessary to determine whether a valid arbitration agreement was formed between Wakeman and the Uber Defendants.[3]

Kansas law requires an offer, an acceptance, and an exchange of legal consideration between parties with capacity to enter a contract in order for a contract to be formed. *Nungesser v. Bryant*, 153 P.3d 1277, 1288 (Kan. 2007).[4] Wakeman acknowledges that she agreed to Uber's Terms of Service, Doc. 20 at 6, so there is no dispute she accepted

---

[3] The parties focus on the agreement between Wakeman and Uber. They do not suggest that Niemann's agreement is the relevant agreement to analyze. But even if they had, it appears that the result may very well be the same: At least one court has applied third-party benefit doctrine to conclude that a ride-share user whose ride was ordered by another family member is covered by the other family member's agreement to arbitrate claims arising out of their use of Uber's services. *See Hughes v. Uber Techs., Inc.*, No. CV 23-1775, 2024 WL 707686 (E.D. La. Feb. 21, 2024) (interpreting the same contractual language present in Niemann's agreement).

[4] Kansas contract law applies here. Federal courts apply the choice of law rules of the state in which they sit, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), and Kansas choice of law principles suggest the location of the "last act necessary" to form a contract provides the applicable body of contract law in a claim related to formation, *Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149 (Kan. 2000). In this case, that means Kansas contract law applies as Wakeman accepted Uber's offer in Kansas. *See* Doc. 1-1 at ¶ 9 (noting the relevant "transactions" occurred in Kansas). Neither party argues for a different result. *See* Doc. 20 at 9; *see also* Doc. 18 at 9.

Uber's offer of said Terms as clickwrap in the Uber app. *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256 (10th Cir. 2012) (noting that clickwrap agreements are ubiquitous and generally enforceable). And no party disputes whether Wakeman had capacity to enter a contract, nor do they dispute that Wakeman received the right to use Uber's digital ride-sharing marketplace in exchange for monetary value flowing to Uber. Accordingly, a contract was formed.

Wakeman argues no contract was formed because there was no "meeting of the minds" (i.e., no mutuality) as to an agreement to arbitrate her claim because her claim in this suit falls outside of Uber's "Services." Doc. 20 at 10.

Wakeman's mutuality argument is unpersuasive. To make a mutuality argument, the predicate showing is that when an offer was accepted the terms were indefinite such that the parties cannot be said to have agreed to the same "essential elements." *Sidwell Oil & Gas Co. v. Loyd*, 630 P.2d 1107, 1110 (Kan. 1981). Such is the case when the parties, unbeknownst to each other, meant two different and equally plausible things by an essential term. *See, e.g., Raffles v. Wickelhaus*, 2 H. & C. 906, 159 Eng. Rep. 375 (Exh. 1864). When such indefiniteness is present, no contract was formed. No such indefiniteness is present in this case. The parties agreed to arbitrate claims arising out of Uber's "Services." And there is no dispute as to the essential definition of services: actions provided in exchange for compensation.

It appears Wakeman is not making a mutuality argument so much as a contract interpretation argument. *Cf. Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 833 (10th Cir. 2023) (determining that whether an arbitration agreement applied to a party's state-law dispute required interpretation of the contract rather than analysis of contract formation); *see also Mendez v. Securitas Sec. Servs., USA, Inc.*, 614 F. Supp. 3d 937, 944 (D. Kan. 2022) (finding a formation issue was raised when it was unclear whether an offer to arbitrate was ever conveyed). *Fedor v. United Healthcare* illustrates this point. In *Fedor*, Fedor claimed that "neither she nor the other class members read or accepted the 2016 arbitration agreement" and the Tenth Circuit held that such an argument raised a formation issue. 976 F.3d 1100, 1107 (10th Cir. 2020). Wakeman does not contend that she was unaware of the arbitration provision; she admits that she agreed to Uber's Terms of Service and only disputes what those Terms mean. *See* Doc. 20 at 6 ("In this case, although Plaintiff had an Agreement with Uber, neither her Agreement, nor the arbitration provision within the Agreement, addressed disputes that do not involve the use of Uber's 'Services'").

5

But the Uber Defendants claim that the scope and definition of the Terms and their relation to arbitrability is a question the parties assigned to the arbitrator in the agreement's delegation clause. Doc. 25 at 2. To be effective, a delegation clause must evince a "clear and unmistakable" intent to delegate a given issue to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). The delegation clause in this agreement plainly does so.

The delegation provision provides that an "Arbitrator shall [] be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory." Doc. 18-1 at 12. It further provides that "[i]f there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue." *Id.* Whether the arbitration agreement covers Wakeman's ride in a ride-share her husband ordered using his Uber app falls squarely within the delegation clause's commitment of "threshold arbitrability issues, *including issues relating to whether the Terms are applicable*" to an arbitrator. *See* Doc. 18-1 at 12 (emphasis added). And Kansas law requires that unambiguous contract terms be given their plain meaning. *Liggatt v. Emps. Mut. Cas. Co.*, 46 P.3d 1120, 1125 (Kan. 2002).

Furthermore, the arbitration agreement explicitly states that it will be governed by the American Arbitration Association's Consumer Arbitration rules. Those rules unmistakably state that the arbitrator decides questions of arbitrability. *See* AAA, Consumer Arbitration Rules (effective September 1, 2014), Rule 14(a); *see also Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1245 (10th Cir. 2018) (holding that incorporating an analogous set of rules, the AAA "Employment Arbitration Rules," constitutes a clear and unmistakable delegation of arbitrability). Simply put, Wakeman agreed that whether she is bound to arbitrate the dispute—the "arbitrability" of her issue—is a question for the arbitrator. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017).

**B**

When a motion to compel is granted, a court shall stay trial proceedings for the parties arbitrating until they conclude arbitration. 9 U.S.C. § 3. Consequently, the case is stayed as to trial proceedings against the Uber Defendants.

The parties have largely ignored how to proceed with regard to Singh. She was not a party to the agreement to arbitrate, neither

6

Wakeman nor the Uber Defendants address the issue of granting a stay as to Singh, and Singh has not separately requested a stay. In such a context, other courts have granted a stay as to non-arbitrating parties when judicial efficiency counsels a stay or when arbitration may have preclusive effect on the non-arbitrated claims. *See Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1518 (10th Cir. 1995); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983) ("it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration"); *Gouger v. Citibank NA*, No. CV 19-02434, 2020 WL 1320723, at *2 (D. Kan. Mar. 20, 2020).

In this case, a stay of all proceedings is appropriate. For one thing, no party has suggested that the case against Singh should continue while the other claims are proceeding in arbitration. And, once they have concluded, the issue of preclusion can be addressed. *Compare B-S Steel v. Texas Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (holding that collateral estoppel requires that the party against whom it is asserted had a "full and fair opportunity to litigate"), *with Adams v. FedEx Ground Package Sys., Inc.*, 546 F. App'x 772 (10th Cir. 2013) (affirming application of collateral estoppel to an arbitrating plaintiff). Moreover, the liability of the Uber Defendants turns on Singh's actions and employment relationship (or lack thereof) with the Uber Defendants. As a result, arbitration will no doubt "shed some light on" the issues in Singh's case. *See Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007). Thus, judicial efficiency counsels issuing a stay regarding Singh as well.

### III

For the foregoing reasons, the Uber Defendants' Motions to Compel Arbitration, Docs. 11 and 17, are GRANTED. The case is also stayed pending completion of arbitration.

It is so ordered.

Date: February 28, 2024       s/ Toby Crouse
                                                  Toby Crouse
                                                  United States District Judge